UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDUARDO MARTIN TORRES, <br> on Behalf of C.R., a Minor, <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner <br> of Social Security Administration, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | SA-23-CV-871-HJB |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on review of the Social Security Administration ("SSA") Commissioner's decision that C.R., a minor whom the Commissioner had previously found to be disabled, had subsequently experienced medical improvement in her condition so as to no longer qualify for child's supplemental security income ("SSI") under title XVI of the Social Security Act, 42 U.S.C. § 1382c. The Court exercises jurisdiction over the case by consent of the parties, pursuant to 28 U.S.C. § 636(c). (*See* Docket Entries 7, 12, and 14.)

After careful consideration of the parties' briefs, the transcript of proceedings ("Tr.") before the SSA, and all other relevant information in the record, the Court finds that substantial evidence supports the Commissioner's decision. Accordingly, for the reasons set out below, the Commissioner's decision is **AFFIRMED**.

**I.     Background.**

CR was born on November 13, 2007. (Tr. 142.) Her father originally filed her SSI application on December 9, 2015, alleging that she became disabled when she was five years old, due to Post-Traumatic Stress Disorder ("PTSD") and Oppositional Defiant Disorder ("ODD"). (Tr. 374, 421.) She was also diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD"). (Tr. 145.) In determining whether C.R. was disabled, the Commissioner considered whether she

functionally met the SSA listings for presumptive disability. (Tr. 146–47.) In accordance with the applicable SSA regulations, *see* 20 C.F.R. § 416.926a (2016), the Commissioner evaluated six applicable domains of functionality, finding "marked" limitations in two of them:

- Acquiring and Using Information: no limitation
- Attending and Completing task: less than marked limitation
- Interacting and Relating with Others: marked limitation
- Moving About and Manipulation of Objects: no limitation
- Caring for Yourself: marked limitation
- Health and Physical Well-Being: no limitation.

(*Id.*) Because C.R. was found to have "marked" limitations as to two domains, the regulations required a finding of disability, *see* 20 C.F.R. § 416.926a(d), and the Commissioner accordingly found C.R. disabled as of November 16, 2015. (Tr. 43, 148.)

After conducting a routine review of C.R.'s continued disability status, the Commissioner determined that C.R.'s disability ended on May 1, 2019, when she was eleven years old. (Tr. 39.) Plaintiff requested reconsideration, and a disability hearing officer upheld the Commissioner's cessation determination. (*Id.*) Plaintiff's father requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 39, 88–115.) The ALJ initially determined that C.R.'s disability had ended (Tr. 186), but the Appeals Council remanded the decision for further consideration because the ALJ had not applied the rules applicable to claims originally made before 2017. (Tr. 194–95.) The ALJ held a second hearing on July 29, 2022, and accepted additional medical evidence from C.R.'s father. (*See* Tr. 39, 116–41, 574–645.)

On November 23, 2022, the ALJ issued his second decision, again finding that C.R.'s disability ended on May 1, 2019. (Tr. 39–57.) Specifically, the ALJ found that C.R. no longer had a marked limitation either in interacting and relating with others or in caring for herself. (Tr.

43, 56.) The ALJ found that C.R. continued to have severe impairments (ODD, ADHD, along with cerebral function disturbance and obstructive sleep apnea), but found that the impairments were not disabling. (Tr. 57.)

The Appeals Council denied Plaintiff's request for review on March 27, 2023. (Tr. 5–10.) C.R.'s father, on behalf of his daughter, filed a *pro se* appeal from the Commissioner's final decision. (Docket Entry 4.)

**II.     Applicable Legal Standards.**

     **A.     *Standard of Review.***

In its review, the Court is limited to a determination of whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standard was applied. 42 U.S.C. § 405(g); *see Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164). The Court may not substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

     **B.     *Entitlement to Continued Disability Benefits.***

A child who has been found disabled must periodically undergo a continuing disability review to determine if she is still eligible for disability benefits. 20 C.F.R. § 416.994a(a) (2017). In conducting this review, the Commissioner follows a three-step evaluation process. 20 C.F.R.

§ 416.994a(b)(1) (2017); Social Security Ruling ("SSR") 05–03p, 2005 WL 1041037, at *1 (S.S.A. Apr. 27, 2005).[1]  At the first step, the Commissioner evaluates whether there has been medical improvement in the impairments the claimant had at the time of the most recent favorable determination, *i.e.*, the "comparison point date" or CPD.  20 C.F.R. § 416.994a(b)(1).  "Medical improvement" is defined as a "decrease in the medical severity of the impairment(s) . . . . based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the] impairment(s)."  *Id.*, §416.994a(c).

If there has been medical improvement, the Commissioner proceeds to the second step, considering whether the impairments the claimant had at the time of the CPD still meet, or medically or functionally equal, the severity of the listing applicable at that time.  20 C.F.R. § 416.994a(b)(2); SSR 05–03p.  For the functional disability analysis, the Commissioner considers six domains of functionality; a finding of "extreme" limitation in any one domain, or "marked" limitations in any two or more domains, requires a finding of disability.  20 C.F.R. § 416.926a(d).

If no finding of disability is made at the second step, the Commissioner proceeds to the third step, to consider whether the claimant's current impairments are disabling under the same rules used to make the initial determination of disability.  20 C.F.R. § 416.994a(b)(3); SSR 05–03p.  In making this last determination, the Commissioner must consider all the impairments the child now has, including any she did not previously have or were not previously considered.  *Id.*

In a benefits termination proceeding, the Commissioner bears the burden of proof, *Griego v. Sullivan*, 940 F.2d 942, 943–44 (5th Cir. 1991), and a favorable finding at any of the three aforementioned steps concludes the review in the claimant's favor, *Lopez v. Astrue*, No. 3:20-CV-1984, 2011 WL 2586759 (N.D. Tex. May 26, 2011) (Ramirez, J.).

---

[1] There are limited exceptions to the general rules described in the text, but they have no application in this case. *See id.* §416.994a(e), §416.994(a)(f).

**III.   Discussion.**

Plaintiff challenges the ALJ's determination at the second step discussed above: whether C.R. was no longer functionally disabled as of May 1, 2019. (Tr. 57.) In making his determination, the ALJ applied the functionality assessment protocol set out in 20 C.F.R. § 416.926a. (Tr. 41.) As noted above, application of that protocol will result in a finding of disability if the child's impairments or combination of impairments result in an extreme limitation in any one of six domains of function, or "marked" limitation in any two or more domains. (*Id.* (citing 20 C.F.R. § 416.926a(d).)  The regulation requires a finding of a "marked" limitation in a domain when impairments "interfere[ ] seriously" with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

In this case, the Commissioner had previously found that C.R. had marked limitations in the domains of interacting and relating with others and caring for herself. (Tr. 43, 146–47.) Finding that C.R. had medical improvement since her previous evaluation, the ALJ proceeded to consider all six domains of functioning, and determined that she no longer had marked limitations in any of them—instead, she was found to have "less than marked" limitation in four domains, and no limitation in the other two. (Tr. 44–49.)

In his *pro se* brief, Plaintiff appears to challenge the ALJ's determinations as to three of the six domains. (*See* Docket Entry 13, at 4.) He also presented additional medical records for this Court's consideration. (*Id.* at 7–10; *see also* Docket Entry 17.) The Court first considers the challenges to the ALJ's determinations, and then addresses Plaintiff's new medical evidence.

**A.  *The ALJ's Challenged Domain Findings.***

Plaintiff disputes the ALJ's findings as to the functionality domains of (1) attending and completing tasks, (2) health and physical well-being, and (3) self-care.  (Docket Entry 13, at 4.)  Each is discussed below.

    1.  *Attending and completing tasks.*

As the ALJ correctly stated, this domain "considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities."  (Tr. 45 (citing 20 C.F.R. § 416.926a(h).)  The ALJ also correctly noted that a school-age child without an impairment should be able to focus her attention in a variety of situations in order to follow directions; remember and organize school materials; and complete classroom and homework assignments.  (Tr. 45.)  *Cf.* 20 C.F.R. § 416.926a(h)(2)(iv).  The child should be able to concentrate on details and not make careless mistakes in her work, beyond what would be expected in other children of the same age who do not have impairments.  *Id.*

Applying these standards, the ALJ found that C.R. has had "less than marked" limitations in this domain since May 1, 2019.  (Tr. 46.)  The ALJ noted that C.R. was not in a special education program and did not receive accommodations at school.  (*Id.*)  While her concentration was noted as moderately impaired, with some limitations in paying attention, the record also showed she was able to work on arts and crafts.  (*Id.*)  In making these determinations, the ALJ relied on state agency medical consultants Karen Schnute, M.D. and Paul Cherry Ph.D.  (Tr. 787.)  Later in his determination, the ALJ added that, according to a psychology report, C.R. could not remain seated, was hyperactive and talking, but was eventually occupied with drawing.  (Tr. 55.)  Treatment records showed that C.R. had moderately impaired concentration, but had intact recent and remote memory, and the ability to follow three-step commands.  (Tr. 55–56.)

Plaintiff does not directly challenge the ALJ's reliance on the evidence and expert opinion outlined above; instead, he asserts, without citing to the record before the Court, that "C.R. still has major issues with staying on tasks to full completion." (Docket Entry 13, at 4.)  Plaintiff's disagreement with the evidence before the ALJ does not support reversal; indeed, even if the Court disagreed with the ALJ's determination, it would still be bound to affirm it so long as it was supported by substantial evidence.  *See Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987) (court may not substitute its own judgment for that of Commissioner).

At the most recent hearing before the ALJ, Plaintiff testified that, while C.R. had some continuing difficulties at school, she was taking advanced math courses, was scoring above the 60th percentile in all her courses, and was generally completing her school assignments in a timely fashion. (Tr. 133–35.)  Plaintiff testified that C.R. in fact did receive some accommodations for completing coursework, and he noted that C.R. has significant problems doing chores, and has to be reminded five or six times. (Tr. 130–31.)  This testimony suggests that some limitation in this domain might be appropriate, just as the ALJ found. (*See* Tr. 46.)  However, the record as a whole fails to show that Plaintiff's impairments "interfere[ ] seriously" with the C.R.'s abilities in this regard.  20 C.F.R. § 416.926a(e)(2).  Accordingly, there is no basis to find that the ALJ's determination was not based on substantial evidence.

    2. *Health and physical well-being.*

In this domain, the ALJ considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on functioning that were not already considered in the domain of moving about and manipulating objects.  *See* 20 C.F.R. § 416.926(a)(*l*). Examples of conditions considered in this domain include generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic

7

reactions, recurrent infection, poor growth, bladder or bowel incontinence,[2] and local or generalized pain.  *Id.*, §416.926a(*l*)(1).

As to this domain, the ALJ determined that C.R. had no limitation.  (Tr. 49–50).  The ALJ noted the medical records that had been summarized by the state agency medical consultants which clearly supported this view.  (*See* Tr. 788.)  In his brief, Plaintiff argues that C.R. is "very lethargic, absent minded[,] and constantly seems to be in a daze, with odd behaviors" and bouts of overeating.  (Docket Entry 13, at 4.)  But Plaintiff cites no record support for these arguments, and they seem inconsistent with his testimony at the hearing that C.R. plays tennis, volleyball, and soccer, that she runs track, and that she has no physical problems in the way she moves.  (T.R. 127–28.)  Plaintiff likewise indicated that C.R. had no physical limitations in the functional report he submitted.  (*See* Tr. 412–13.)  Accordingly, substantial evidence likewise supports the ALJ's findings as to this claim.

    3. *Self-care.*

Regarding this domain, the ALJ correctly cited the applicable standard, which considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways.  This includes how the child copes with stress and changes in the environment and whether the child takes care of her own health, possessions, and living area.  (Tr. 48 (citing (20 C.F.R. § 416.926a(k).)

The ALJ found that C.R. has limitations, but concluded that they were less than "marked." (Tr. 49, 56.)  The ALJ's findings in support of this conclusion, however, were extremely sparse: he stated only that C.R. was no longer receiving counseling or medications, and that, while she did

---

[2] The Commissioner's brief discusses the question of incontinence (Docket Entry 15, at 9), but that discussion seems more appropriate to the self-care domain discussed below. In any case, there is no allegation of C.R.'s incontinence by Plaintiff, only that C.R. will wear dirty linen unless corrected by Plaintiff. *See* Part III(A)(3), *infra*.

have some limitations with caring for herself, "she was able to do what she was told to do most of the time." (Tr. 49.) The only evidentiary support the ALJ cited for these statements were equally sparse, conclusory statements from the state agency medical consultants. (*See* Tr. 788.)

Elsewhere in his determination, the ALJ cited to Plaintiff's testimony about C.R.'s self-care, but the ALJ's characterization of that testimony does not appear to be supported by the record. The ALJ repeatedly stated that, according to Plaintiff, C.R. "performed self-grooming tasks and received extra help if needed." (Tr. 44, 56.) Contrary to this characterization, Plaintiff testified to more serious limitations in this regard:

> there are times when I have to tell her to take a shower and she'll put the same underclothes back on not aware that it's the dirty ones, you know? I have to constantly remind her to change her underwear, to change her bras, to take showers, to wash her hair, and . . . I'm trying to recall a time where that wasn't a fight or a struggle and that's hard. It's . . . a constant battle with her.

(Tr. 135.) In his brief, Plaintiff argues that C.R. "is absolutely unable to keep herself clean," and that "she struggles in bathing," has "continued soiling of underwear," and she struggles taking care of her hair and teeth. (Docket Entry 13, at 4.) While the Commissioner points out that Plaintiff has not supported these arguments with citations to the record (Docket Entry 15, at 9), Plaintiff's testimony provides some support for his argument, and the ALJ does not appear to have fully considered that testimony.

Nevertheless, even if the Court were to find that the ALJ's determination as to this domain was not supported by substantial evidence, any error would be harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam) (applying harmless error analysis in disability benefits context); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988) (same). Here, the most the evidence could show is that, contrary to the ALJ's finding, C.R. continued to have a "marked" limitation as to the self-care domain. (*Cf*. Tr. 147.) As noted above, however, a "marked" limitation as to only one domain is insufficient to show functional disability. 20 C.F.R.

§ 416.926a(d). Accordingly, even assuming error by the ALJ with regard to this domain, "it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (citing *Frank*, 326 F.3d at 622).

### B. *Additional Medical Records.*

As noted above, Plaintiff has presented additional medical and other records to the Court for review. (*See* Docket Entry 13, at 7–10; Docket Entry 17.) These records date from 2023 and 2024, and they concern C.R.'s additional diagnosed psychiatric conditions, medications she has been taking, some difficulties she has had in her classes, and her recovery from a December 2023 knee surgery.

All of these records are dated after the July 2022 hearing before the ALJ, as well as his November 2022 determination; they do not appear to be part of the record on appeal. When confronted with additional information of this sort, the Court may order the Commissioner to consider additional material evidence, under 42 U.S.C. § 405(g), but only when it "was not available to the claimant at the time of the administrative proceeding and . . . might have changed the outcome of the prior proceedings." *Istre v. Apfel*, 208 F.3d 517, 519 (5th Cir. 2000) (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)). The emphasis here is on the effect of the new evidence on the prior proceeding: in other words, new evidence is not material "insofar as it details the alleged worsening of a claimant's condition after the date of the hearing," but instead "must shed light on the severity of a claimant's medical condition *before* the hearing." *Hammond v. Barnhart*, 132 F. App'x 6 (5th Cir. 2005) (emphasis in original).

In this case, Plaintiff has not shown that the subsequent records would shed light on the conditions C.R. suffered at the time of the hearing. To the extent they concern previously identified conditions, they do not show that the conditions were actually more severe at the time of the hearing, but, at most, that some conditions may have worsened since that time. And to the

extent the records concern new conditions (such as C.R.'s knee surgery), they are not relevant to the appeal before this Court. Accordingly, the Court declines to order the Commissioner to consider Plaintiff's newly proffered evidence as part of this appeal.

For the above reasons, the Commissioner's decision to end disability benefits is **AFFIRMED**, and the Clerk of Court is directed to file a Judgment in this case..

**SIGNED** on August 28, 2023.

Henry J. Bemporad
United States Magistrate Judge